UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSEPH NOAH-DEAN KING,

                Plaintiff,

                             Case No. 2:25-cv-159

v.

                             Honorable Maarten Vermaat

UNKNOWN WATT et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility in Munising, Alger County, Michigan. The events about which he complains occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following AMF staff in their official and individual capacities: Warden **Terry Wilkins**, Sergeant **Unknown Watt**, and Correctional Officer **Unknown Beck**. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on January 27, 2025, at AMF, "he was holding his cell door slot[2] seeking to talk to someone because he was contemplating suicide."[3] (*Id.*, PageID.6.) Defendant Watt and "his move team responded to the emergency distress call" regarding Plaintiff. (*Id.*) Defendant Watt "ordered Plaintiff to strip naked, bend at the waist, spread his 'cheeks' and to put his clothes back on [three] separate times." (*Id.*) "The [fourth] time, [Defendant] Watt ordered Plaintiff to give [Watt] his clothes, bend at the waist, and spread his cheeks." (*Id.*) At that time, Defendant Watt "sprayed a whole can of pepper spray" on "[Plaintiff's] bare skin, burning [Plaintiff's] rectum and his genitals," and Plaintiff claims that this occurred "without reason." (*Id.*, PageID.6–7.) Defendant Watt "and his platoon then restrained Plaintiff [and] placed him in a restraint chair." (*Id.*, PageID.7.)

Thereafter, Plaintiff was put on suicide watch. (*Id.*) "Plaintiff inquired if he could shower and wash the chemicals off his body," and Plaintiff's "request w[as] denied."[4] (*Id.*) Plaintiff states that he "now has daily irritations when he uses the restroom . . . ." (*Id.*)

Subsequently, Plaintiff "was placed in segregation for not giving up his food slot." (*Id.*) Plaintiff alleges that in segregation, "he was targeted and retaliated against by" Defendant Beck. (*Id.*) Specifically, Plaintiff alleges that on March 17, 2025, Defendant Beck "falsely documented

---

[2] This practice is commonly known as taking one's food slot "hostage." An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). This action violates MDOC prison rules. *See Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *R & R adopted by* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

[3] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

[4] Plaintiff does not indicate that any of the named Defendants denied his request for a shower, and he does not indicate that he is bringing any claims regarding this denial of a shower. (*See generally* Compl., ECF No. 1.) Under these circumstances, the Court does not construe Plaintiff's complaint to raise any claims regarding the denial of Plaintiff's request for a shower.

a class [I] misconduct [ticket]," claiming "that Plaintiff [had] threatened her while she was doing her round at approximately 4:24 a.m." (*Id.*)

At some point between March 17, 2025, and March 31, 2025, "Plaintiff inquired of [Defendant] Beck why did she lie on [Plaintiff] in the ticket." (*Id.*, PageID.8.) In response, Defendant Beck "told Plaintiff that she did not like him" and that "she'd write a ticket that will keep him in prison longer." (*Id.* (phrasing in original retained).) Defendant Beck also stated "that she wrote [Plaintiff] up because [Plaintiff] wrote up her coworker, [Defendant] Watt, for inhumane treatment." (*Id.*)

On March 31, 2025, a non-party administrative law judge held a hearing for Plaintiff's class I misconduct charge for threatening behavior, and "Plaintiff was found not guilty" because Defendant Beck "was not in the unit 2 logbook" and not on camera doing rounds at 4:24 a.m. on March 17, 2025. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. (*Id.*, PageID.5.) Plaintiff also avers that Defendants violated the MDOC's policies and state law. (*Id.*) Plaintiff seeks monetary damages, as well as injunctive and declaratory relief. (*Id.*, PageID.5. 10–11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments

6

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as injunctive and declaratory relief. (Compl., ECF No. 1, PageID.5. 10–11) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign

immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility typically moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

In the present action, Plaintiff's allegations against the named Defendants relate solely to past harm, not future risk of harm. And, Plaintiff is no longer confined at AMF, which is where he avers that Defendants are employed. Further, Plaintiff seeks injunctive relief in the form of the expungement of "the disciplinary conviction[] described in this complaint." (Compl., ECF No. 1, PageID.11.) But in the complaint, Plaintiff indicates that he was found not guilty of the misconduct ticket issued by Defendant Beck, and Plaintiff's complaint does not discuss any other misconduct convictions that Plaintiff received. (*See id.*, PageID.8.) Under these circumstances, there is no misconduct conviction that is "described in this complaint" to be expunged.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Claims Against Defendant Wilkins

Plaintiff lists Defendant Wilkins, the warden at AMF, as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant Wilkins was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Wilkins in the body of his complaint. (*See generally* Compl., ECF No. 1.) And, Plaintiff's claims against Defendant Wilkins fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Wilkins liable due to Wilkins's supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Wilkins encouraged or condoned the conduct of Wilkins's subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, all of Plaintiff's claims against Defendant Wilkins will be dismissed for failure to state a claim.

10

C.       **Eighth Amendment Claims**

1.       **Excessive Force Claim Against Defendant Watt**

Plaintiff alleges that Defendant Watt used excessive force against him on January 27, 2025.

(*See* Compl., ECF No. 1, PageID.6, 9.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective

component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that after Defendant Watt and "his move team responded to the emergency distress call" regarding Plaintiff "holding his cell door slot" on January 27, 2025, Defendant Watt "ordered Plaintiff to strip naked, bend at the waist, spread his 'cheeks' and to put his clothes back on [three] separate times." (Compl., ECF No. 1, PageID.6.) Plaintiff claims that on "[t]he [fourth] time, [Defendant] Watt ordered Plaintiff to give [Watt] his clothes, bend at the waist, and spread his cheeks." (*Id.*) At that time, Plaintiff alleges that Defendant Watt "sprayed a whole can of pepper spray" on "[Plaintiff's] bare skin, burning [Plaintiff's] rectum and his genitals," and Plaintiff claims that this occurred "without reason." (*Id.*, PageID.6–7.)

The Sixth Circuit has "found that the use of a chemical agent does not constitute malicious or sadistic punishment in violation of the Eighth Amendment if its use is reasonably necessary to subdue a noncompliant prisoner." *Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *2 (6th Cir. Apr. 17, 2017) (citing *Combs*, 315 F.3d at 557). And, in *Crippin v. Strickland*, at the preliminary review stage, this Court found that the use of pepper spray when the prisoner-plaintiff was "holding his food slot hostage" was not an excessive use of force when the Plaintiff's allegations showed that the pepper spray was used after the prisoner-plaintiff failed to comply with verbal commands and that the officers "did not continue to use [the] chemical agent after [the prisoner-plaintiff]

eventually complied." *Crippin v. Strickland*, No. 1:23-cv-1277, 2024 WL 1298047, at *5 (W.D. Mich. Mar. 27, 2024). However, taking Plaintiff's factual allegations as true and in the light most favorable to him, under the circumstances alleged by Plaintiff, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Watt at this time. *Cf. Nelson v. Sharp*, No. 96-2149, 1999 WL 520751, at *2 (6th Cir. July 14, 1999) (discussing that "the question of the degree of force used by the prison guard is analytically distinct from the question of whether [the prisoner] violated prison rules by keeping his hand in the food slot," and concluding that a prisoner-plaintiff may be able to "prove that [a correctional officer] violated his Eighth Amendment rights by slamming the food slot door on his hand in such a manner as to inflict unnecessary pain in a wanton manner, not justified by prison necessity or the degree of violation").

### 2.    Cruel and Unusual Punishment Claim Against Defendant Beck

Plaintiff claims that Defendant Beck violated his Eighth Amendment rights by issuing Plaintiff a false misconduct ticket. (*See* Compl., ECF No. 1, PageID.10.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Here, Plaintiff claims that Defendant Beck "attempt[ed] to punish Plaintiff" when she issued Plaintiff a false misconduct ticket. (*See* Compl., ECF No. 1, PageID.10.) However, "[a] false accusation of misconduct is not, in and of itself, an Eighth Amendment violation because it

does not deprive a prisoner of the 'minimal civilized measure of life's necessities' or subject him to a serious risk of harm." *Chandler v. Perkins*, No. 1:18-cv-857, 2018 WL 4356570, at *3 (W.D. Mich. Sept. 13, 2018). And, although not specifically articulated by Plaintiff, to the extent that Plaintiff intended to claim that his placement in segregation "for not giving up his food slot" violated his Eighth Amendment rights (Compl., ECF No. 1, PageID.7), placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. 337, 347 (1981).

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendant Beck will be dismissed for failure to state a claim.

### D.     First Amendment Retaliation Claim Against Defendant Beck

Plaintiff alleges that Defendant Beck retaliated against him by issuing a false class I misconduct ticket for threatening behavior on March 17, 2025. (Compl., ECF No. 1, PageID.7–8, 9.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that at some point between March 17, 2025, and March 31, 2025, after Defendant Beck issued Plaintiff the class I misconduct ticket at issue in the complaint,

14

Plaintiff asked Defendant Beck "why did she lie on [Plaintiff] in the ticket." (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that in response, Defendant Beck "told Plaintiff that she did not like him" and "that she wrote [Plaintiff] up because [Plaintiff] wrote up her coworker, [Defendant] Watt, for inhumane treatment." (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, at this time, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Beck.

### E.    Fourteenth Amendment Claims

#### 1.    Procedural Due Process Claims

Plaintiff alleges that Defendant Beck's issuance of the false class I misconduct ticket and Plaintiff's placement in segregation "for not giving up his food slot" violated his Fourteenth Amendment due process rights. (Compl., ECF No. 1, PageID.5, 7, 10.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or

15

when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that Defendant Beck issued him a class I misconduct ticket, and Plaintiff indicates that he was ultimately found not guilty of the charge. (Compl., ECF No. 1, PageID.7–8.) Plaintiff also states that he "was placed in segregation for not giving up his food slot." (*Id.*, PageID.7) As explained below, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his receipt of this misconduct ticket and his placement in segregation.

As an initial matter, Plaintiff was found not guilty of the misconduct charge, and therefore, Plaintiff did not receive any sanctions for a misconduct conviction because he was not convicted of the charge. Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property,

16

he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Further, as to Plaintiff's placement in segregation "for not giving up his food slot," the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). And, Plaintiff fails to allege any facts to suggest that Plaintiff was held in segregation for an extended period of time such that it would constitute an "atypical and significant hardship." *See, e.g.*, *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant).

Accordingly, for these reasons, Plaintiff fails to state any Fourteenth Amendment procedural due process claims.

### 2.    Equal Protection Claims

In the complaint, when setting forth the relief that Plaintiff seeks in this action, without providing any explanation, he references "equal protection of law." (Compl., ECF No. 1, PageID.10.) The Court generously construes this reference to raise a Fourteenth Amendment equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### F.    Section 1983 Claims Regarding Violation of the MDOC's Policies

Plaintiff alleges that Defendants Watt and Beck violated the MDOC's "work rules, policies, and operating procedures." (Compl., ECF No. 1, PageID.10.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of the MDOC's policies will be dismissed for failure to state a claim.

### G.    State Law Claims Against Defendants Watt and Beck

Finally, Plaintiff alleges that Defendants Watt and Beck violated his rights under state law. (*See, e.g.*, Compl., ECF No. 1, PageID.5 (referencing "torts" committed by Defendants Watt and Beck); *id.*, PageID.9–10 (same).)

As an initial matter, as discussed above, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983. *See Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

19

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because Plaintiff continues to have pending federal claims against Defendants Watt and Beck, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Watt and Beck.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Wilkins will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Watt and Beck: official capacity claims, Eighth Amendment claims against Defendant Beck, Fourteenth Amendment procedural due process and equal protection claims, and § 1983 claims regarding alleged violations of the MDOC's policies. The following § 1983 claims against Defendants Watt and Beck in their individual capacities remain in the case: Eighth Amendment excessive force claim against Defendant Watt and First Amendment retaliation claim against Defendant Beck. Plaintiff's state law claims against Defendants Watt and Beck also remain in the case.

An order consistent with this opinion will be entered.

Dated:    September 4, 2025                        /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge

20